**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DONTAY TABBS | No. 2:25-cr-00305-GAW-2 |

## <u>MEMORANDUM</u>

This Memorandum accompanies the Court's June 18, 2026 Order (Dkt. 250)

denying the Motion to Suppress (Dkt. 214) (Motion) filed by Defendant Dontay Tabbs.

By way of background, a grand jury charged Defendant with one count of

conspiracy to distribute a controlled substance. Superseding Indictment at 2–17 (Dkt.

166). Defendant seeks to suppress evidence that the Government obtained by means

of an administrative subpoena issued to Verizon Wireless on August 7, 2024.

In the subpoena, the Federal Bureau of Investigation requested the following

records for the period between April 4, 2024, and August 6, 2024:

> Customer or subscriber name, address of service, and billing address; Local and long distance telephone connection records (examples include: incoming and outgoing calls, push-to-talk, and SMS/MMS connection records); Telephone or Instrument number (including IMEI, IMSI, UFMI, and ESN) and/or other customer/subscriber number(s) used to identify customer/subscriber, including any temporarily assigned network address (including Internet Protocol addresses) which may be relevant to an authorized law enforcement inquiry, involving the following: 302-668-0409.

Exhibit A at 3 (Dkt. 214-1).

Defendant argues that because the Government "conducts a search under the

Fourth Amendment when it accesses historical cell phone records that provide a comprehensive chronicle of the user's past movements[,]" it needed "a search warrant, not an administrative subpoena," to obtain the requested records. Motion at 3 (unpaginated). And since "the nature of the request by the government was unconstitutional, [ ] *any* information produced as a result . . . must be suppressed." *Id.* (emphasis in original). This Court disagrees.

For the Government to conduct a search against which an individual can claim protection under the Fourth Amendment "the individual [must have] manifested a subjective expectation of privacy in the object of the challenged search, and society [must be] willing to recognize that expectation as reasonable . . . ." *Kyllo v. U.S.*, 533 U.S. 27, 33 (2001) (quotation marks omitted).

In assessing whether an expectation of privacy is reasonable, the Supreme Court has held that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743–744 (1979). In such cases, the conveyor of information "takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." *U.S. v. Miller*, 425 U.S. 435, 443 (1976).

Relying on this "third-party doctrine," courts have repeatedly found that individuals do not possess reasonable expectations of privacy in information they voluntarily convey to telecommunications providers and that such information falls outside of the purview of the Fourth Amendment. *See, e.g., Smith*, 442 U.S. at 742 (discussing telephone connections); *U.S. v. Christie*, 624 F.3d 558, 573 (3d Cir. 2010)

2

(discussing IP addresses and subscriber information); *Walker v. Coffey*, 956 F.3d 163, 166 (3d Cir. 2020) (discussing files stored and processed by electronic communications providers). Accordingly, a search warrant is not typically required to obtain it. *See U.S. v. Goldstein*, 914 F.3d 200, 202 (3d Cir. 2019) ("[I]f there is no reasonable expectation of privacy as to [cell-site location information], then its acquisition does not require a search warrant[.]").

In *Carpenter v. United States*, the Supreme Court cabined the application of this rule, requiring that the Government obtain a warrant to collect cell-site location information (CSLI) from telecommunications providers. 585 U.S. 296, 316 (2018). The Court reasoned that the heightened sensitivity of location data and the involuntary nature of how cell phones collect this data distinguishes CSLI from the third-party records in question in *Smith* and *Miller*. *Id.* at 314–315. Nevertheless, the Court took pains to emphasize that its decision was "a narrow one" that "[did] not disturb the application of *Smith* and *Miller* . . . ." *Id.* at 316. It further noted that "[t]he Government will be able to use subpoenas to acquire records in the overwhelming majority of investigations," and that the warrant requirement is only applicable "in the rare case where the suspect has a legitimate privacy interest in records held by a third party." *Id.* at 319.

Despite their potential use in identifying user locations, all circuit courts to consider the issue after *Carpenter* have held that IP addresses do not comprise a class of information in which an individual would have such a privacy interest. *See U.S. v. Hood*, 920 F.3d 87, 92 (1st Cir. 2019); *U.S. v. Wellbeloved-Stone*, 777 F. App'x 605,

607 (4th Cir. 2019); *U.S. v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018); *U.S. v. Soybel*, 13 F.4th 584, 592–594 (7th Cir. 2021); *U.S. v. Rosenow*, 50 F.4th 715, 737–738 (9th Cir. 2022); *U.S. v. Trader*, 981 F.3d 961, 968 (11th Cir. 2020).

Here, the Government's subpoena of Verizon Wireless for phone records does not implicate the Fourth Amendment. The FBI requested three categories of information from Verizon Wireless: subscriber information (subscriber name, address of service, and billing address); telephone connection records; and telephone or instrument numbers used to identify the customer affiliated with the account (including IP addresses). All three categories fall squarely within the scope of the third-party doctrine. *See Christie*, 624 F.3d at 573 (network identifiers and subscriber information); *Smith* 442 U.S. at 742 (connection records). *Carpenter* does little to upset this precedent. As the Government requested information in which there was no reasonable expectation of privacy, it did not commit a search or seizure under the Fourth Amendment.

Defendant argues that even if the challenged evidence itself does not fall under protection of the Fourth Amendment, it should be excluded as fruit of the poisonous tree resulting from an illicit request for CSLI under *Carpenter*. *See* Motion at 3 (citing *Wong Sun v. U.S.*, 371 U.S. 471, 488 (1963)). This argument is defective on two grounds. First, as established above, none of the requested classes of information appear to fall within the scope of the holding in *Carpenter*, so the subpoena does not amount to an unconstitutional request. Second, *Wong Sun* states that "the . . . question . . . is whether, granting establishment of the primary illegality [of the

contested action], the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 488. (quotation marks and citation omitted). Even if, as Defendant contends, certain components of the Government's request were so vague as to bring CSLI within the request's scope, the evidence to which he objects would not have been obtained by the "exploitation of that illegality." *See id.*

As the Third Circuit noted in *United States v. Christine*, in cases where law enforcement, "acting pursuant to a valid warrant, seize an article whose seizure was not authorized[,] . . . [w]ithout exception federal appellate courts have held that only that evidence which was seized illegally must be suppressed . . . ." 687 F.2d 749, 757 (3d Cir. 1982) (footnote and citations omitted). Similarly, in *Andersen v. Maryland*, the Supreme Court implied that the proper remedy for the seizure of papers outside of the scope of an otherwise valid warrant was the return and suppression of the offending papers without requiring the corresponding suppression of any properly seized papers. 427 U.S. 463, 481 n.11 (1976).

Under Defendant's construction of the facts here, the Government, using a partially defective instrument, collected some classes of records that could properly be collected using an administrative subpoena and others that could not. If the administrative subpoena was valid as to the evidence that the Government seeks to admit, the proper remedy for the impermissible collection of other evidence would to be to suppress only the offending material. *Cf. Christine*, 687 F.2d at 758 ("The cost

of suppressing all the evidence seized, including that seized pursuant to the valid portions of the warrant, is so great that the lesser benefits accruing to the interests served by the Fourth Amendment cannot justify complete suppression."); *U.S. v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018) ("[T]he remedy [for overbreadth] is to sever the offending phrase from the warrant, suppress any evidence collected under it, and admit the evidence collected under the valid portions that remain.").

In any case, Defendant has not established standing to object to the subpoena regardless of the nature of the Government's actions. Fourth Amendment protections cannot be invoked vicariously. *Alderman v. U.S.*, 394 U.S. 165, 174 (1969). "[O]nly defendants whose Fourth Amendment rights have been violated" are entitled to protections under the exclusionary rule. *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). Accordingly, the relevant inquiry in assessing a movant's invocation of the exclusionary rule is if "the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party." *U.S. v. Payner*, 447 U.S. 727, 731 (1980) (emphasis in original) (citations omitted). The movant bears the burden of showing that he or she had such an expectation. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980); *U.S. v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010) (quoting *Rawlings*, 448 U.S. at 104).

Individuals do not typically have a legitimate expectation of privacy in business records created and held by a third party. *See, e.g., Miller*, 425 U.S. at 440–441. *But see Carpenter*, 585 U.S. at 297. Evidence obtained from such records cannot be suppressed under the exclusionary rule, even if that information were obtained in violation of another party's Fourth Amendment rights. *See Payner*, 447 U.S. at 731.

*See also U.S. v. Anthony*, 354 F. Supp. 3d 607, 619–620 (E.D. Pa. 2018), *aff'd on other grounds*, No. 16-1462, 2022 WL 16947930 (3d Cir. Nov. 15, 2022) (applying the *Payner* rule after *Carpenter* to a defendant's objection to the use of a co-defendant's CSLI as evidence).

Even if Defendant were able to establish a circumstance in which the exclusionary rule could be invoked, *his* invocation of the rule is precluded by the fact that his motion fails to allege a personal privacy interest in the records at issue. In his motion, Defendant notes that "[t]he [G]overnment has ascribed [the cell number] as belonging to Mr. Tuck." Motion at 2. Defendant neither refutes this allegation nor makes any further claim of a personal connection to the subpoenaed cell phone records that would entitle him to a legitimate expectation of privacy in them. Absent a showing that he has a privacy interest protected by the Fourth Amendment in the contested records, the *Payner* rule forecloses Defendant's invocation of the exclusionary rule.

Accordingly, this Court properly denied the Motion.

DATED: June 22, 2026

BY THE COURT:

_____

GAIL A. WEILHEIMER, J.

7